■ WILLIAM McCLEERY et al., Appellants, v CONSOLIDATED EDISON OF NEW YORK, INC., et al., Respondents. [852 NYS2d 757]—

Defendants (Con Ed) made out a prima facie case of entitlement to summary judgment by submitting the deposition testimony of several individuals who were present at the accident location, none of whom knew how plaintiff sustained injury. They did not see the Con Ed vehicle run over plaintiff's foot, nor did they observe any displacement of the 8 to 12 orange cones set up around plaintiff's truck as he threaded a length of gas pipe held in a vise attached to the rear of the vehicle.

Even if the evidence submitted by plaintiff in opposition to the motion had been sufficient to raise a question concerning how the accident occurred, in the absence of any proof as to how plaintiff sustained his injury, it failed to raise a triable issue of fact with respect to the alleged negligent operation of the Con Ed vehicle (*see Saborido-Calvo v New York City Tr. Auth.*,

11 AD3d 216 [2004]). Plaintiff's inability to relate the manner in which the accident occurred does not relieve him of the burden to set forth a prima facie case by demonstrating that defendants' "negligence was 'a substantial cause of the events which produced the injury'" (*Lynn v Lynn*, 216 AD2d 194, 195 [1995], quoting *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]). Concur—Tom, J.P., Friedman and McGuire, JJ.

Saxe and Gonzalez, JJ., dissent in a memorandum by Saxe, J., as follows: I respectfully dissent, because I conclude that issues of fact are presented, regarding exactly how plaintiff's foot was crushed and whether the driver of the Con Edison vehicle was negligent, that preclude the grant of summary judgment to defendants.

On March 22, 2004, plaintiff William McCleery was working for Hawkeye Construction Company in connection with a contract between Hawkeye and defendant Con Edison pursuant to which Hawkeye was to replace and repair gas mains. McCleery was part of a crew replacing the gas lines for homes located on Murray Lane in Flushing, Queens. Plaintiff and his coworker, John Bauer, arrived in their Hawkeye "box" truck at the work site, at 8:00 A.M., parking the truck with the driver's side next to the curb, where it remained all day.

That afternoon, at approximately 3:20 P.M., plaintiff was in the process of preparing a new pipe to be installed to run from the outside to the inside of one of the homes on that street. For the cutting and preparation of the pipe, a length of pipe was held by a vise attached to the body of the truck, on its rear passenger side. Consequently, to perform the cutting and threading, plaintiff had to stand in the street on the passenger side of the truck.

A Con Edison employee, Michael Coluni, drove a Con Edison panel van to the work site to deliver pipe hangers, which are used to support gas lines. As Coluni approached the work site, he observed plaintiff cutting the pipe on the rear passenger side of the Hawkeye truck and initially stopped his van approximately 20 to 30 feet behind plaintiff's truck. Thereafter, he drove his truck forward, stopping approximately parallel to the Hawkeye truck, in a position where his driver's door was past the vise area. The two trucks were separated by approximately two to four feet. Coluni slid open the door to his truck and handed the pipe hangers to plaintiff, who was standing between the two trucks facing the driver's side of the Con Ed truck. The two men spoke briefly, plaintiff placed the pipe hangers in his pocket, and then he turned around and walked back.

While Coluni stated that he observed plaintiff walk around to

the back of his truck, and only then began to pull away, plaintiff says that he walked only two or three steps back to the vise area to continue the task of threading the pipe that was still in the vise. According to plaintiff, he was standing in the street between the two vehicles, facing the vise, with his back toward the Con Ed truck and his right foot behind him, pressing forward to operate the threader, when he felt himself "tipping" and falling down without understanding why, and he felt pain in his right foot. He rolled underneath his truck and began screaming for help. Plaintiff did not make any observations regarding the Con Ed truck and what had occurred.

Defendant asserts that plaintiff has failed to offer evidence demonstrating either how the accident occurred or that the van driver was negligent. However, the established facts, combined with some disputed facts, provide a basis for a possible inference that plaintiff was injured because Coluni failed to make necessary adjustments as he drove his van away from the Hawkeye truck, so as to avoid running over plaintiff's foot and knocking him over as he proceeded with his work in the area between the two vehicles.

The majority cites *Saborido-Calvo v New York City Tr. Auth.* (11 AD3d 216 [2004]) for the proposition that plaintiff failed to offer any evidence of negligence. However, in that case the plaintiff had fallen onto subway tracks and been hit by a train, but the submitted evidence provided no basis from which to infer negligence on the part of the train operator. The situation here is different. Plaintiff's statement that he returned to his position between the two vehicles to recommence threading the pipe in the vise, when he was knocked over and his foot crushed, when seen in combination with the evidence that Coluni pulled his van away from the Hawkeye truck after giving plaintiff the pipe hangers, permits the inference that Coluni failed to notice plaintiff's presence between the vehicles and that, as he pulled away, the back of the Con Ed van knocked plaintiff down and ran over his foot.

The majority's assertion that none of the submitted evidence supports the inference of negligence on defendant's part cannot be squared with this Court's ruling in *Brito v Manhattan & Bronx Surface Tr. Operating Auth.* (188 AD2d 253 [1992], *appeal dismissed* 81 NY2d 993 [1993]). In *Brito*, the testimony at trial established that the defendant's bus made a right turn at an intersection, and the plaintiff was observed immediately thereafter lying in the crosswalk with a crushed right foot and other injuries, and with a bag of crushed groceries next to him, some produce from which was smeared in the direction traveled

by the bus, whose right rear tires bore traces of the same foods. While this Court recognized that the bus driver might not have been negligent, it concluded that the evidence was sufficient to create a prima facie case, since "[i]t is enough that [plaintiff] shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred," viewing the evidence in the light most favorable to the plaintiff and giving him every favorable inference (188 AD2d at 254, quoting *Ingersoll v Liberty Bank of Buffalo*, 278 NY 1, 7 [1938]). While evidence of how the injuries were caused was strong in *Brito*, evidence of the defendant's negligence was, if anything, weaker in *Brito* than it is in the present case.

In holding that the circumstantial evidence was sufficient to permit an inference of *both* negligence *and* causation, the Court in *Brito* cited the nature of the injuries, the position of the plaintiff's body in the crosswalk, the proximity and timing of the bus's movement, and the link between the crushed produce and the bus (188 AD2d at 254-255). Notably, however, while much of that evidence clearly supported the inference that the plaintiff's injuries were caused by his being struck by the bus, far less of the evidence logically supported an inference of the driver's negligence. The one piece of evidence that most clearly supported the inference that the bus driver in *Brito* had acted negligently was the position of the plaintiff's body in the crosswalk after the accident, which could lead to the inference that the plaintiff had been in the crosswalk, with the right of way, when he was struck by the bus. Yet, in this Court's view, the evidence about where the plaintiff lay in the street after the accident apparently failed to provide a basis for inferring that the plaintiff had been in the crosswalk with the right of way before being struck by the bus, since its reversal of the plaintiff's verdict and order of a new trial was based upon a perceived *"absence of evidence that the pedestrian-plaintiff was actually in the crosswalk when the bus began its turn"* (188 AD2d at 255 [emphasis added]). This Court held that in the absence of evidence that the plaintiff was in the crosswalk when the bus began its turn, the instruction given to the jury regarding the traffic regulation requiring vehicles turning a corner to yield the right of way to pedestrians in the crosswalk "assumed a critical fact" and was unduly prejudicial to the defendant's case (*id.*).

Simply put, if, in *Brito*, the location of the plaintiff's body after the accident did not permit a finding that he was at that approximate location before the bus struck him, then precious little indeed remained to permit the inference that the bus

driver had been negligent. Yet, this Court specifically held that a prima facie showing of negligence had been made. There is far more circumstantial evidence supporting the claim of negligence in the matter now before us. The mere timing of the events just before the incident, established in part by plaintiff's testimony that he went immediately back to work at the vise after receiving the pipe hangers from Coluni, places him in a danger zone where he could be hit as the Con Edison van pulled away. Notwithstanding Coluni's self-serving testimony that he carefully watched plaintiff leave that area before he pulled away, there is a possible inference from plaintiff's testimony that Coluni pulled away without properly ensuring that plaintiff was not between the two vehicles at the time, permitting a finding of negligence. Indeed, by insisting that he waited to pull away until plaintiff had gone to the back of his truck, Coluni implicitly recognized the risk of injury to plaintiff if in fact he had remained situated between the two vehicles as Coluni drove off.

With or without *Brito* as a point of comparison, the foregoing evidence is sufficient prima facie to permit a reasonable inference of negligence.

Moreover, there is also evidence supporting the inference of causation. While it is certainly possible that plaintiff coincidentally fell down just at the moment the Con Edison van began to drive away, the timing of events and plaintiff's possible proximity to the van as he stood between the vehicles is sufficient to permit an inference that the Con Edison van somehow knocked plaintiff over and ran over his foot.

I therefore submit that summary judgment should have been denied.